LAW OFFICES OF CURTIS B. COULTER, P.C.
Curtis B. Coulter (Nevada Bar No. 3034)
403 Hill Street
Reno, NV 89501
Telephone: (775) 324-3380
Facsimile: (775) 324-3381

*Proposed Liaison Counsel*
*Additional Counsel listed on signature page*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT LOWINGER, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>  v.<br><br>MGM MIRAGE, J. TERRANCE LANNI, JAMES J. MURREN, DANIEL J. D'ARRIGO and ROBERT H. BALDWIN,<br><br>    Defendants. | Case No. 2:09-cv-01558-RCJ-(LRL)<br><br>CLASS ACTION |
| KHACHATUR HOVHANNISYAN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>  v.<br><br>MGM MIRAGE, J. TERRANCE LANNI, JAMES J. MURREN, DANIEL J. D'ARRIGO and ROBERT H. BALDWIN,<br><br>    Defendants. | Case No. 2:09-cv-2011-LRH-RJJ<br><br>CLASS ACTION |

**THE PUBLIC PENSION FUNDS' MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF THEIR SELECTION OF LEAD AND LIAISON COUNSEL**

1540627.1

The Arkansas Teacher Retirement System ("Arkansas Teacher"), the Philadelphia Board of Pensions and Retirement ("Philadelphia P&R") and the Luzerne County Retirement System ("Luzerne County Retirement") (collectively, the "Public Pension Funds") hereby respectfully move this Court for an order: (1) consolidating the above-captioned actions (the "Related Actions") pursuant to Fed. R. Civ. P. 42(a); (2) appointing the Public Pension Funds as lead plaintiff for the class pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §78u-4(a)(3)(B)); and (3) approving the Public Pension Funds' selection of Nix, Patterson & Roach, LLP ("Nix Patterson") and Barroway Topaz Kessler Meltzer & Check, LLP ("Barroway Topaz") as lead counsel and the Law Offices of Curtis B. Coulter, P.C. ("Coulter P.C.") as liaison counsel. This Motion is made on the grounds that the Public Pension Funds are the "most adequate plaintiff." *See* 15 U.S.C. §78u-4(a)(3)(B). Further, the Public Pension Funds have selected and retained counsel with vast experience in prosecuting securities class actions to serve as lead counsel. In support of this Motion, the Public Pension Funds file herewith a memorandum of points and authorities and the declaration of Curtis B. Coulter.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.  PRELIMINARY STATEMENT

The Related Actions are brought on behalf of all persons who purchased the securities of defendant MGM Mirage ("MGM" or the "Company") between August 2, 2007 and March 5, 2009, inclusive (the "Class Period"). The Related Actions allege violations of Sections 10(b) and 20(a) of the Exchange Act as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C.§§ 78j(b) and 78(t)), and Rule 10b-5 promulgated thereunder (17 C.F.R.§ 240.10b-5).

Pursuant to the PSLRA, the Related Actions should be consolidated because they involve common issues of law and fact. *See* Fed. R. Civ. P. 42(a); §III.A., *infra*. After the Court's ruling on consolidation, the Public Pension Funds should be selected as lead plaintiff because, to the best of its members' knowledge, they have the largest financial interest in the relief sought by the class.[1] *See In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002); *Stocke v. Shuffle Master, Inc.*, 2007 U.S. Dist. LEXIS 91535, at *5-*6 (D. Nev. 2007) (appointing institutional investor group with the largest collective financial interest). In addition, the Public Pension Funds satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because their claims are typical and they will fairly and adequately represent the class' interests. *See Shuffle Master*, 2007 U.S. Dist. LEXIS 91535, at *6-*9. Finally, in accordance with the PSLRA, the Public Pension Funds' selection of lead and liaison counsel should be approved. *See* §IV, *infra*; 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.  FACTUAL BACKGROUND

MGM is a Delaware corporation that maintains its principal offices in Las Vegas, Nevada. The Company primarily owns and operates casino resorts and offers gaming, hotel, entertainment, retail and other resort amenities. Throughout the Class Period, MGM touted its construction of the massive CityCenter complex as an historic achievement and the creation of an iconic landmark that would transform the face of the Las Vegas Strip. Despite ballooning construction costs, MGM issued positive statements about the progress of CityCenter, assuring investors that the project was on schedule and would open in late 2009. Along with MGM's positive statements about the progress of CityCenter, the defendants boasted of MGM's superior

---

[1] *See* Declaration of Curtis B. Coulter in Support of the Public Pension Funds' Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Their Selection of Lead and Liaison Counsel ("Coulter Decl."), Exhibits ("Exs.") A-C.

balance sheet and relative ease in securing billions of dollars in financing prior to and during the credit crisis in the Fall of 2008. Both assertions were false.

Unbeknownst to investors, one of the towers within CityCenter was improperly built and required massive corrective work. The construction defects led the Clark County, Nevada Department of Development Service to issue several notices of violations to the builder and to suspend construction for a period of time. The notices were first issued in July 2008, yet MGM made no mention of the defects until January 2009. On January 7, 2009, MGM blindsided investors by announcing that construction defects would force the Company to cap what was projected as a forty-nine-story tower within the complex at twenty-eight floors. Completing construction would be too costly, and proceeding without remedying the defects would leave the tower susceptible to collapsing in high winds or seismic activity.

More bad news followed. After months of touting MGM's superior balance sheet, the Company followed the news of CityCenter's construction problems by disclosing that its liquidity position became critical and that the Company was near insolvency. Specifically, after drawing down $840 million from its credit facility in late-February (exhausting its entire $7 billion credit line), on March 3, 2009, the Company filed a notice of late filing for its 2008 10-K. The principal reason given by MGM for its inability to file was the ongoing assessment of the Company's "financial position and liquidity needs." News articles published on March 3, 2009 and March 4, 2009, warned investors that without securing more than $1 billion in capital, MGM would likely declare bankruptcy. In response, MGM's stock dropped from over $15 in early January 2009 to close at $1.89 on March 5, 2009.

1540627.1

### III. ARGUMENT

#### A. The Related Actions Should be Consolidated

The PSLRA provides that, prior to appointing a lead plaintiff, the Court must decide whether to consolidate the Related Actions. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii); *In re Century Aluminum Co. Sec. Litig.*, 2009 U.S. Dist LEXIS 81205, at *6-*8 (N.D. Cal. 2009) ("A court must rule on a motion to consolidate before it can rule on a motion to appoint a lead plaintiff."). Here, the Related Actions now pending in this District are: (1) *Lowinger v. MGM Mirage, et al.*, Case No. 2:09-cv-01558-RCJ (LRL); and (2) *Hovhannisyan v. MGM Mirage, et al.*, Case No. 2:09-cv-02011-LRH (RJJ). Both actions – virtual carbon copies of each other – should be consolidated because they arise out of the same facts and allege identical violations of law. On the record before the Court, consolidation should simply not be in dispute. *See In re Tronox, Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 95349, at *2, *10 (S.D.N.Y. 2009).

#### B. The PSLRA's Lead Plaintiff Provisions

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). First, the plaintiff who files the initial action must publish a notice to the class within twenty days, informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). Here, in connection with the filing of the first-filed action, notice was published on *Business Wire* on August 19, 2009. *See* Coulter Decl., Ex. D. Within sixty days of the publication of notice, any person who is a member of the proposed class may apply to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II).

Second, the PSLRA provides that within ninety days after publication of notice, courts shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person ***or group of persons*** that –
>
> (aa)   has either filed the complaint ***or made a motion*** in response to a notice…;
>
> (bb)   in the determination of the court, has the ***largest financial interest*** in the relief sought by the class; and
>
> (cc)   otherwise ***satisfies the requirements of Rule 23*** of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii) (emphasis added); *Cavanaugh*, 306 F.3d at 729-30.

The time period in which class members may move to be appointed lead plaintiff in this case expires October 19, 2009. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B). Pursuant to the PSLRA's provisions, and within the requisite time frame after publication of the required notice, the Public Pension Funds have timely moved this Court to be appointed lead plaintiff on behalf of all members of the class. *See Kuriakose v. Fed. Home Loan Mortgage Co.*, 2008 U.S. Dist. LEXIS 95506, at *2 (S.D.N.Y. 2008). In addition, the Public Pension Funds have selected and retained counsel experienced in the prosecution of securities class actions to represent themselves and the class. *See* Coulter Decl., Exs. F-H. Accordingly, the Public Pension Funds satisfy the PSLRA's filing requirements and are entitled to have their application for appointment as lead plaintiff considered by the Court.

### C. The Public Pension Funds are the "Most Adequate Plaintiff"

#### 1. The Public Pension Funds Have the Largest Financial Interest in the Relief Sought by the Class

The Public Pension Funds lost approximately $4.6 million in connection with their Class Period purchases of MGM stock. To the best of the Public Pension Funds' knowledge, this represents the largest known financial interest in the relief sought by the class. *See Cavanaugh*, 306 F.3d at 730-32; *Shuffle Master*, 2007 U.S. Dist. LEXIS 91535, at *5-*6.

#### 2. The Public Pension Funds Satisfy Rule 23

In addition to possessing the largest financial interest, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). While the PSLRA requires that a lead plaintiff meet the requirements of Rule 23(a), at this stage of the litigation, only a preliminary showing is required with respect to typicality and adequacy. *See Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 2007 U.S. Dist. LEXIS 67354, at *16-*20 (D. Ariz. 2007). Consequently, in deciding motions for appointment of lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Shuffle Master*, 2007 U.S. Dist. LEXIS 91535, at *7 (citing *Cavanaugh*, 306 F.3d at 730 n.5).

##### a. The Public Pension Funds Are Typical

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. The test of typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v.*

*Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). However, the claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *Id.*

Here, the Public Pension Funds are typical because, just like all other class members, they: (1) purchased or acquired MGM securities during the Class Period; (2) purchased MGM securities in reliance upon the alleged materially false and misleading statements issued by defendants; and (3) suffered damages thereby. *See id.* Thus, the Public Pension Funds' claims are typical of those of other class members because their claims and the claims of other class members arise out of the same course of events. *See* 7 Herbert Newberg & Alba Conte, Newberg on Class Actions §22.24, at 107-08 (4th ed. 2002) ("[t]he majority of class action decisions support the view that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met").

### b. The Public Pension Funds Are Adequate

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." To determine adequacy, the Court must evaluate: "(1) whether the interests of the class representatives coincide with those of the class, and (2) whether the class representative has the ability to prosecute the action vigorously." *Shuffle Master*, 2007 U.S. Dist. LEXIS 91535, at *8-*9. Here the Public Pension Funds are adequate to represent the class. Their interests are aligned with the interests of the class because both suffered from artificial inflation of the price of MGM securities and would benefit from the same relief. Additionally, there is no evidence of antagonism between the Public Pension Funds and the class and its members have certified their willingness to serve as representatives of the class.

1540627.1

The Public Pension Funds consist of only three large, sophisticated public pension funds. *See In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 306-08 (S.D. Ohio 2005). Arkansas Teacher manages over $10 billion in assets and has recovered hundreds of millions of dollars for investors in PSLRA securities actions. *See* The Public Pension Funds' Joint Declaration in Support of Their Motion for Appointment as Lead Plaintiff and Approval of Their Selection of Lead Counsel, Coulter Decl., Ex. E. Philadelphia P&R manages over $3 billion in assets and has likewise recovered hundreds of millions of dollars for injured investors. *Id*. Luzerne County Retirement manages approximately $150 million and is an experienced fiduciary. *Id*.

Because the Public Pension Funds suffered substantial losses as a result of their Class Period purchases of MGM stock, they are committed to vigorously prosecuting this litigation and maximizing the recovery for the class.[2] Coulter Decl., Ex. E. Moreover, as shown below, the Public Pension Funds' proposed counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, the Public Pension Funds satisfy the typicality and adequacy requirements of Rule 23 for the purposes of this motion. *See Frank v. Dana Corp.*, 237 F.R.D. 171, 173 (N.D. Ohio 2006).

## IV. THE PUBLIC PENSION FUNDS' CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The Court should not disturb lead

---

[2] Congress enacted the PSLRA to encourage institutional investors, like the Public Pension Funds, to play a more prominent role in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995) reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors would benefit the class because institutional investors with large financial stakes are often better able to effectively manage complex litigation than individuals. *See id*. ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").

plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also Cavanaugh*, 306 F.3d at 734.  The Public Pension Funds have selected Nix Patterson and Barroway Topaz as lead counsel for the class. Both firms are actively engaged in complex litigation and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Coulter Decl., Exs. F and G.  Furthermore, Nix Patterson and Barroway Topaz have a proven track record of working cooperatively in litigating complex securities class actions, having recently secured a recovery of $160 million in *Smajlaj v. Brocade Communications Systems, Inc.*, No. 05-2042 (N.D. Cal.) on behalf of the Arkansas Public Employees Retirement System and the Erie County Pennsylvania Employees Retirement System.

      Thus, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from Nix Patterson and Barroway Topaz.  In addition, Coulter P.C. has ample experience in complex and multiparty litigation in Nevada and throughout the country.  *See* Coulter Decl., Ex H.  Accordingly, the Court should approve the Public Pension Funds' selection of lead counsel and liaison counsel.

9

**V.    CONCLUSION**

For the foregoing reasons, the Public Pension Funds respectfully request that the Court: (1) consolidate the Related Actions pursuant to Fed. R. Civ. P. 42(a); (2) appoint the Public Pension Funds as Lead Plaintiff; and (3) approve their selection of Nix Patterson and Barroway Topaz as Lead Counsel, and Coulter P.C. as Liaison Counsel.

DATED: October 19, 2009	Respectfully submitted,

LAW OFFICERS OF CURTIS B. COULTER, P.C.

s/ Curtis B. Coulter
Curtis B. Coulter
403 Hill Street
Reno, NV 89501
Telephone: (775) 324-3380
Facsimile: (557) 324-3381

*Proposed Liaison Counsel*

NIX, PATTERSON & ROACH, L.L.P.
Bradley E. Beckworth
Jeffrey J. Angelovich
Susan Whatley
Brad E. Seidel
205 Linda Drive
Daingerfield, TX 75638
Telephone: (903) 645-7333
Facsimile: (903) 645-4415

BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP
Ramzi Abadou
Erik D. Peterson
580 California Street, Suite 1750
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

-and-

        Sean M. Handler
        Darren J. Check
        280 King of Prussia Road
        Radnor, PA 19087
        Telephone: (610) 667-7706
        Facsimile: (610) 667-7056

        *Proposed Lead Counsel*

        KEIL & GOODSON, PA
        Matt C. Keil
        John W. Goodson
        611 Pecan Street
        Texarkana, AR 71854
        Telephone: (870) 772-4113
        Facsimile: (870) 773-2967

        *Additional Counsel for*
        *Arkansas Teacher Retirement System*