# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) ) ) ) | Case No.: 2:09-cv-01558-GMN-LRL |
| MGM Mirage Securities Litigation | | **ORDER** |

Pending before the Court are four Motions for Appointment as Lead Plaintiff and Approval of Lead Counsel: ECF Nos. 26, 32, and 35 in the above-captioned case, and ECF No. 14, which was originally filed in 2:09-cv-02011- GMN-LRL, *Hovhannisyan v. MGM Mirage, et al*.  In light of the filings before the Court and the hearing held on September 30, 2010, the motions at ECF Nos. 32 and 14 are **GRANTED**, thereby making Public Pension Funds and Stichting Pensioenfonds Metaal en Techniek co-lead plaintiffs and their counsel of choice co-lead and co-liaison counsel.  The other two motions--ECF Nos. 26 and 35--are **DENIED**.

## I.    FACTUAL BACKGROUND

This class-action lawsuit was brought on behalf of all the entities and persons who purchased the securities of Defendant MGM Mirage between August 2, 2007 and March 5, 2009 (the "Class Period").  The action alleges violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 as amended by the Private Securities Litigation Reform Act of 1995 ("PLSRA").  *See* 15 U.S.C. §§ 78a et seq.

Throughout the Class Period, some of the officers and directors of MGM, who are also listed as defendants in this matter, issued positive statements about MGM's revenues and liquidity and assured the public that MGM's CityCenter project was progressing smoothly.  However, Plaintiffs allege that such statements were materially false and

misleading, causing them to unsuspectingly purchase the stock for artificially inflated prices while MGM insiders sold close to $90 million worth of their own personally held MGM stock.  When the truth about MGM's deteriorating financial situation became apparent, the stock price plummeted and caused large monetary losses to investors who had purchased the securities based on MGM's allegedly false representations.

## II.   LEGAL STANDARDS

The PSLRA provides guidelines for the appointment of a lead plaintiff or plaintiffs to oversee class actions brought under federal securities laws. *See In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *see also* 15 U.S.C. § 78u-4(a)(1).  First, the plaintiff who files the initial action must publish a notice to the class within twenty days, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i).  In this case, the notice was published on *Business Wire* on August 19, 2009.

Second, any person who is a member of the proposed class may apply to be appointed as lead plaintiff within sixty days of the publication of the notice. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  All of the motions under consideration here were filed on October 19, 2009.  Then, within ninety days after the publication of notice, courts are supposed to consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of the class members. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA supplies guidance in selecting the lead plaintiff, providing that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that --
>> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

1    (cc) otherwise satisfies the requirements of Rule 23
     of the Federal Rules of Civil Procedure.

2    15 U.S.C. § 78u-4(a)(3)(B)(iii).  Judge Kozinski summarized these factors, writing:

3
4            While the words 'most capable' seem to suggest that the
             district court will engage in a wide-ranging comparison to
5            determine which plaintiff is best suited to represent the class,
             the statute defines the term much more narrowly: The 'most
6            capable' plaintiff-and hence the lead plaintiff-is the one who
             has the greatest financial stake in the outcome of the case, so
7            long as he meets the requirements of Rule 23.

8    *In re Cavanaugh*, 306 F.3d at 729.  Thus, the Court must first determine which plaintiff

9    has the largest financial stake in the litigation, and then analyze, based on the information

10   that plaintiff has provided in its pleadings and declarations, whether it satisfies the

11   requirements of Rule 23(a), "in particular those of 'typicality' and 'adequacy.'" *Id.* at

12   730.  If the plaintiff with the greatest stake does not satisfy the Rule 23(a) criteria, then

13   the Court must repeat the inquiry with regard to the next-largest financial stakeholder.

14         Federal Rule Civil Procedure 23(a) provides that the prerequisites to a class action

15   are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are

16   questions of law or fact common to the class; (3) the claims or defenses of the

17   representative parties are typical of the claims or defenses of the class; and (4) the

18   representative parties will fairly and adequately protect the interests of the class.  Factors

19   (3) and (4)--typicality and adequacy, respectively--are the factors relevant to selecting the

20   lead plaintiff.  Examination of the other two factors under Rule 23--numerosity and

21   common questions of law or fact--is deferred until the lead plaintiff moves for class

22   certification. *Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, 2:06-

23   CV-2674-PHX-RCB, 2007 WL 2692217, at *5 (D. Ariz. Sept. 11, 2007).  The test for

24   typicality "is whether other members have the same or similar injury, whether the action

25   is based on conduct which is not unique to the named plaintiffs, and whether other class

members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The lead plaintiff's claims need not, however, be identical, or even substantially identical, to the claims of the class in order to satisfy typicality. *Mazza v. American Honda Motor Co.*, 254 F.R.D. 610, 618 (C.D. Cal. 2008). They need only be similar. *Id.*  The test for adequacy is: "(1) whether the interests of the class representatives coincide with those of the class, and (2) whether the class representative has the ability to prosecute the action vigorously." *Stocke v. Shuffle Master, Inc.*, 2:07-CV-00715-KJD-RJJ, 2007 WL 4262723, at *3 (D. Nev. Nov. 30, 2007).

Once the Court finds a plaintiff with a large financial stake that appears to meet the requirements of Rule 23, the court must give the other plaintiffs an opportunity to rebut the notion that this presumptive lead plaintiff meets the typicality and adequacy requirements. 15 U.S.C. § 78u-4(a)(3)(B)(iv); *In re Cavanaugh*, 306 F.3d at 730.  If the other plaintiffs do not adequately rebut the Court's initial determination, then the Court should appoint the presumptive lead plaintiff to be the actual lead plaintiff.

The PLSRA vests the lead plaintiff with the authority to select and retain lead counsel, subject to the approval of the Court. U.S.C. § 78u-4(a)(3)(B)(v).  Though the selection of lead counsel is subject to the approval of the Court, courts generally do not reject the appointment of truly inadequate lead counsel, but, rather, reject the lead plaintiff if "the presumptive lead plaintiff's choice of counsel is so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on the plaintiff's willingness or ability to perform the functions of lead plaintiff." *In re Cavanaugh*, 306 F.3d at 733.

///

///

## III.    CAST OF CHARACTERS

### A.    Public Pension Funds ("PPF")

Public Pension Funds, a grouping of plaintiffs composed of the Arkansas Teacher Retirement System, the Philadelphia Board of Pensions and Retirement, and the Luzerne County Retirement System, are the presumptive lead plaintiff.  They lost approximately $4.6 million in connection with their Class Period purchases of MGM stock, (Mot. 6, ECF No. 32), which appears to be the greatest loss sustained by any of the entities requesting lead plaintiff status.  PPF's claims are also typical of the other plaintiffs, because--just like the other plaintiffs--they: (1) purchased or acquired MGM securities during the Class Period; (2) purchased the MGM securities in reliance on the allegedly false and misleading statements issued by defendants; and (3) suffered damages thereby. Further, PPF are adequate because their interests appear to be aligned with the rest of the class, and they have significant resources to devote to this case, as they manage approximately $13.15 billion and apparently have recovered hundreds of millions of dollars for investors through PSLRA securities actions. (*Id.* at 8.)  There is also no reason to doubt the competence of the law firms PPF have selected to serve as counsel; all three--Nix Patterson; Barroway Topaz; and Coulter P.C.--have experience in complex civil proceedings. (*Id.* at 9.)

In an attempt to rebut PPF's prima facie showing that they are the presumptive lead plaintiff, DeKalb County Pension Fund contends that PPF should not be appointed lead plaintiff for three reasons: (1) one of PPF's three members, Arkansas Teacher Retirement System, was a net seller during the Class Period, meaning that it sold more MGM stock than it purchased; (2) PPF have not presented any evidence demonstrating that they are a legitimate and cohesive group with "joint decision making ability"; and (3) PPF are subject to a "unique defense" insofar as the majority of their claimed losses

1    were suffered as a result of sales prior to the end of the Class Period and may not be

2    recoverable because the losses are not attributable to fraud. (DeKalb's Resp. 3-4, ECF

3    No. 50.)  None of these arguments is particularly persuasive.

4    　　　First, DeKalb confuses net sellers with net gainers.  Whereas a net gainer achieves

5    a net profit from its Class Period shares, a net seller merely sells more shares than it

6    purchased during the Class Period and may well still suffer a loss.  *See Richardson v.*

7    *TVIA, Inc.*, No. C-06-06304, 2007 WL 1129344, at *3.  Although courts often disapprove

8    of net gainers being lead plaintiffs, courts will allow net sellers who are also net losers to

9    be appointed lead plaintiff, as they normally have no problem proving damages.  *See*

10    *Hodges v. Immersion Corp.*, No. C-09-4073, 2009 WL 5125917, at *2 (N.D. Cal. Dec.

11    21, 2009); *Richardson*, 2007 WL 1129344 at *3.  Here, Arkansas Teacher was a net

12    loser--as were PPF as a whole, (*see* PPF Resp. 3, ECF No. 61), and, thus, PPF may still

13    be appointed lead plaintiff.  The case that DeKalb cites as support for its argument--*In re*

14    *McKesson HBOC, Inc. Securities Litigation*, 97 F. Supp. 2d 993, 996-97 (N.D. Cal.

15    1999)--dealt with a net seller that achieved a net gain, and, as such, is not relevant here.

16    　　　DeKalb's second argument is based on unsettled law--the Ninth Circuit has not yet

17    addressed whether a group of institutional investors, banded together in an attempt to

18    become lead plaintiff, needs to affirmatively demonstrate that their group is sufficiently

19    cohesive to make timely, prudent decisions.  Whereas this District and courts in other

20    districts of the Ninth Circuit seem to subscribe to the argument that "in light of the

21    PLSRA's statement that the most adequate plaintiff may be a 'group of persons,' . . . the

22    PLSRA authorizes plaintiffs to aggregate their losses for purposes of the lead plaintiff

23    determinations" and generally do not discuss or inquire into a group's cohesion, *see City*

24    *of Ann Arbor Emps. Ret. Sys. v. Accuray Inc.*, No. C 09-03362, 2009 U.S. Dist. LEXIS

25    105466, at *8 (N.D. Cal. Oct. 26, 2009); *see, e.g., Shuffle Master*, 2007 WL 4262723;

*Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-00765-KJD-LRL, 2010 WL 3522278 (D. Nev. Aug. 31, 2010), some district courts in the Ninth Circuit have adopted the Third Circuit's wariness toward lead plaintiff groups that may be too large or varied to operate effectively as a single unit. *See, e.g., Schriver v. Impac Mortg. Holdings, Inc,* No. SACV 06-31 CJC, 2006 U.S. Dist. LEXIS 40607, at *20-*24 (C.D. Cal. May 1, 2006). Accordingly, such courts generally do not confer lead plaintiff status to a group of plaintiffs unless there is "some showing that the proposed group members have some relationship independent of the litigation or that they will be able to coordinate their efforts." *Id.* DeKalb advocates for this approach and points out that PPF did not explicitly make such a showing in its briefs.

Absent direction for the Ninth Circuit, this Court is disinclined to adopt the Third Circuit's methodology. The Court does, however, recognize that a lead plaintiff group's adequacy may properly be called into question if its constituents are too numerous and varied to allow it to conduct efficient and effective litigation. This is not the case with PPF. The timely filing of their motions and responsive papers, as well as the coherent, well-formulated nature of those filings, tend to show that the three groups of which PPF is comprised are able to coordinate their efforts effectively. Further, when asked at the hearing on these motions about how PPF intended to develop litigation strategy and make critical decisions, counsel for PPF indicated that the three funds planned on holding weekly telephonic meetings, at which they would discuss strategy and conduct votes, if necessary. This is sufficient to convince the Court that PPF will be an adequate lead plaintiff, despite being composed of three separate funds.

DeKalb's third argument fails for a few reasons. First, it is not clear that because PPF suffered many of their losses as a result of sales prior to the class-ending corrective disclosure of fraud on March 5, 2009 they are actually in a unique position in this class

action, particularly because the Complaint focuses on when Plaintiffs purchased MGM's securities, not when they sold them, alleging that Plaintiffs "suffered damages in connection with their purchases of MGM common stock during the Class Period." (*See* Compl. 74, ECF No. 1.)

Further, PPF are not the sort of "in-and-out" investors without a proper cause of action that DeKalb is trying to portray them as. PPF actually sold a significant number of MGM stocks after MGM's partial fraud disclosure on January 7, 2009. (PPF Reply 3, ECF No. 61.) Although PPF's damages may be affected because they sold their shares following the partial, rather than the full, disclosure of the fraud, this will not prevent them from being able to prove loss causation. *See In re Catalina Marketing Corp. Securities Litigation*, 225 F.R.D. 684, 687 (M.D. Fla. 2003). Therefore, PPF can still be lead plaintiff, and their motion (ECF No. 32) is **GRANTED**.

None of the other plaintiffs oppose PPF's appointment, though PMT, which is discussed next, asks that PMT be appointed co-lead plaintiff so that it may adequately represent the debt purchasers in the class action, as PPF only purchased common stock during the Class Period, whereas PMT purchased debt securities. (*See* PMT Resp., ECF No. 49.)

### B.    Stichting Pensioenfonds Metaal en Techniek ("PMT")

PMT, another institutional investor, is asking the Court to appoint it as lead plaintiff in the consolidated case and to approve its choice of counsel--Robbins Geller Rudman & Dowd LLP and the Goodman Law Group--both of which would be competent to undertake this sort of securities litigation. Though PMT meets the typicality and adequacy prongs for reasons similar to PPF in that it suffered losses as a result of purchasing MGM securities during the Class Period and its interests are aligned with those of the rest of the class, it suffered only $2 million in losses related to Defendants'

1  actions, (Mot. 4, ECF No. 14 2:09-cv-02011).

2  Acknowledging that this loss is less than PPF's, PMT has requested that it be

3  appointed co-lead plaintiff with PPF.  Because PPF only purchased MGM common stock

4  during the Class Period, whereas PMT purchased debt securities, PMT argues that

5  allowing it to be co-lead plaintiff will ensure the protection of the interests of the class

6  members that purchased debt securities. (PMT Resp. 1-2, ECF No. 49.)  Although the

7  Court realizes that it need not appoint PMT as co-lead plaintiff, *see In re Enron Corp.*

8  *Securities Litigation*, 206 F.R.D. 427, 445 (S.D. Tex. 2002) (noting that "courts have

9  repeatedly concluded that stock purchasers can represent purchasers of debt instruments

10  and vice versa in the same action"), it also recognizes the benefit that could be provided

11  by having a co-lead plaintiff that bought debt securities and is therefore positioned to

12  vigorously advocate on behalf of similarly-situated debt purchasers.  As it is within the

13  Court's discretion to appoint a co-lead plaintiff in order to ensure that all plaintiffs are

14  adequately represented, *see, e.g., Miller v. Ventro Corp.*, No. 01-CV-1287, 2001 WL

15  34497752, at *10-*11 (N.D. Cal. Nov. 28, 2001), PMT's motion (ECF No. 14 in 2:09-cv-

16  02011) is GRANTED.

17  ### C.    DeKalb County Pension Fund ("DeKalb")

18  DeKalb suffered a total loss of approximately $1,486,893 as a result of

19  Defendants' actions. (P. & A. 2, ECF No. 36.)  Because this is less than the loss sustained

20  by PPF or PMT and because the presumption that these plaintiffs should be appointed

21  before DeKalb has not been rebutted, DeKalb's motion (ECF No. 35) is **DENIED**.

22  ### D.    James Vidrine

23  Mr. Vidrine only sustained losses totaling $39,300 due to Defendants' actions

24  during the Class Period. (Mot. 1, ECF No. 26.)  After learning of the losses allegedly

25  sustained by the other potential lead plaintiffs, he acknowledged that his loss was

probably too small to allow him to be lead plaintiff, (Resp., ECF No. 48), and he subsequently failed to appear at the September 30, 2010 hearing.  Mr. Vidrine's acknowledgement was correct.  Accordingly, his motion (ECF No. 26) is **DENIED**.

<u>**CONCLUSION**</u>

IT IS HEREBY ORDERED that Public Pension Funds' and Stichting Pensioenfonds Metaal en Techniek's Motions for Appointment as Lead Plaintiff and Approval of Lead Counsel are **GRANTED**.  The two plaintiffs are directed to serve as co-lead plaintiffs, and their counsel of choice are directed to serve as co-lead and co-liaison counsel, as appropriate.

IT IS FURTHER ORDERED that the Motions of DeKalb County Pension Fund and James Vidrine are **DENIED**.

DATED this 25th day of October, 2010.

_____
Gloria M. Navarro
United States District Judge