UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

***

| | |
|---|---|
| In re MGM MIRAGE SECURITIES LITIGATION. | 2:09-cv-01558-GMN -VCF<br><br>**ORDER** |

  Before the court is plaintiffs' Arkansas Teacher Retirement System, Luzerne County Retirement System, and Philadelphia Board of Pensions and Retirement (hereinafter "Lead Plaintiffs") Motion to Lift Stay.  (#158).  Defendants Robert C. Baldwin, Daniel J. D'Arrigo, MGM Mirage, and James J. Murren filed an Opposition (#167), and Lead Plaintiffs filed a Reply (#173).  The court held a hearing on June 20, 2012.

**Background**

  A complaint commencing this action was filed on August 19, 2009, asserting violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of all persons who purchased publically traded securities of MGM between August 2, 2007, and March 5, 2009.  (#1).  On October 25, 2010, the court entered an order appointing Lead Plaintiffs, Lead Counsel, and Liaison Counsel for the class (#85), and on January 14, 2011, Lead Plaintiffs filed their Consolidated Complaint (#94).  On April 17, 2012, after the court dismissed the Consolidated Complaint on puzzle-pleading grounds, with leave to amend, Lead Plaintiffs filed their First Amended Complaint for violations of Federal Securities Laws (#152).  On the same day, Lead Plaintiffs requested a status conference.  (#153).  Defendants filed a response to Lead Plaintiffs' request for a status conference, asserting that the status conference was

"unwarranted" and "makes no sense." (#157)[1]. On May 8, 2012, Lead Plaintiffs' counsel learned that allegedly relevant evidence stored in a warehouse had been destroyed. (#158).

Lead Plaintiffs filed the instant motion to lift stay on May 11, 2012. (#158). On the same day, Lead Plaintiffs filed an *ex parte* motion for order shortening time. (#160). On May 14, 2012, defendants filed an opposition to the *ex parte* motion. (#162). On May 15, 2012, the court entered an order denying Lead Plaintiffs' *ex parte* motion for order shortening time (#160), setting a briefing schedule for the motion to lift stay, and scheduling a hearing for June 20, 2012. (#164). On May 29, 2012, defendants filed their opposition to the motion to lift stay. (#167). On May 30, 2012, defendants filed a joint motion to dismiss Lead Plaintiffs' first amended complaint for failure to state a claim. (#170). On June 11, 2012, Lead Plaintiffs filed a reply in support of their motion to lift stay. (#173).

**Motion To Lift Stay**

    A.    **Relevant Law**

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss..." 15 U.S.C. § 78u-4(b)(3)(B). The purpose and intent of the stay is: (i) "to prevent unnecessary imposition of discovery costs on defendants;" and (ii) to ensure that class action complaints "stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed." *SG Cowen Sec. Corp. v. U.S. Dist. Ct.*, 189 F.3d 909, 911-12 (9th Cir. 1999). *See also In re Metro. Sec. Litig.*, 2005 U.S. Dist. LEXIS 46033, at *11-*12 (E.D. Wash. 2005).

The stay provision of the PSLRA protects defendants from (i) being coerced into a premature settlement of a frivolous claim to avoid the costs and burdens imposed by discovery (*see* H.R. Conf. Rep. No. 104-369, at 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 736); and (ii) a fishing expedition designed to find actionable conduct not pled in the complaint (*see* S. Rep. No. 104-98, at 14 (1995),

---

[1] On June 14, 2012, the court entered an order denying Lead Plaintiffs' motion for a status conference. (#176).

2

*reprinted in* 1995 U.S.C.C.A.N. 679, 693); *8 WorldCom*, 234 F. Supp. 2d at 305; *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 106 (D. Mass. 2002).

The mandatory stay can only be lifted in specific circumstances. Before lifting the PSLRA discovery stay, the court must find that: (i) the request is sufficiently particularized; and (ii) maintenance of the stay would either generate impermissible risk of the destruction of evidence or create undue prejudice. *See Waldman v. Wachovia Corp.*, 2009 U.S. Dist. LEXIS 1988, at *2 (S.D.N.Y. 2009). A discovery request is "particularized" within the meaning of 15 U.S.C. § 78u-4(b)(3)(B) if it seeks a "clearly defined universe of documents" and other information. *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 2002 U.S. Dist. LEXIS 26261, at *32 (S.D. Tex. 2002), aff'd sub nom. *Blaz v. Belfer*, 368 F.3d 501 (5th Cir. 2004); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004).

### B. Lead Plaintiffs' Argument

Lead Plaintiffs argue that the automatic stay should be lifted in order to permit Lead Plaintiffs to conduct limited discovery[2] regarding the destroyed documents. (#158). Lead Plaintiffs assert that no later than February 2012, defendants knew that 500 boxes containing "highly relevant" evidence had been destroyed, yet failed to inform this court or Lead Plaintiffs' counsel. *Id.* Lead Plaintiffs assert that they do not accuse defendants of intentionally destroying the evidence, but are concerned with the safety

---

[2] Lead Plaintiffs assert that they need to discover: (I) the name, address and contact information for the person(s) ("Individual(s)") who had the 500 boxes destroyed and/or sold the documents to a shredding company; (ii) how much cash the Individual(s) received for allegedly selling the documents; (iii) the name of the shredding/recycling company the Individual(s) sold the documents to; (iv) the name(s) of any and all individuals who have information relevant to this spoliation; (v) information related to whether Defendants reported this alleged crime to any state or federal criminal authorities and, if so, when; (vi) the results of Defendants' efforts, if any, to assess exactly which portion of the missing documents exist in another format; (vii) the names, titles and contact information for all persons who have knowledge of the document destruction; (viii) when Defendants were first advised of the document destruction and by whom; (ix) all facts and documents related to Defendants' investigation, if any, of this spoliation; (x) information concerning any financial, business, familial or other relationships between the shredding company, the Individual and MGM or any of the Individual Defendants (or their agents), or its counsel; (xi) information regarding Defendants' purported compliance with the PSLRA and Federal Rules of Civil Procedure preservation requirements with respect to both hard copy and electronic documents; (xii) information concerning whether and when a litigation hold was sent once Defendants reasonably anticipated this litigation; and (xiii) information concerning Defendants' retention policy and procedures with respect to hard copy documents. (#158).

of the remaining relevant documents. *Id.* Lead Plaintiffs argue that "given the lack of candor," the court should order defendants to formally provide the information outlined above pursuant to Federal Rules of Civil Procedure 33 and 34. *Id.* Lead Plaintiffs ask this court to enter an order stating that (1) Lead Plaintiffs may notice and depose up to eight (8) individuals with knowledge of the destruction of evidence at issue here, (2) defendants shall provide full and accurate responses to Lead Plaintiffs' document requests and interrogatories regarding the document destruction at issue here, and (3) the parties shall meet and confer and negotiate in good faith regarding any additional discovery about the document destruction at issue here consistent with this District's Local Rules. (#158-1).

### 1. Lifting Stay Warranted

Lead Plaintiffs assert that they are not seeking discovery to "bolster their claims," as the discovery sought is "limited to discovering facts about the destructed (sic) and relevant evidence." (#158). They argue that the Congressional record shows that the purpose of the stay is to protect "defendants from plaintiffs who would use discovery to substantiate an initially frivolous complaint" or who would impose "massive discovery costs on Defendants to obtain an early settlement." *Newby v. Enron Corp.*, 338 F.3d 467, 471 (5th Cir 2003); *Lernout,* 214 F. Supp. 2d at 106; *accord WorldCom,* 234 F. Supp. 2d at 305. Here, Lead Plaintiffs assert, "[n]either rationale underlying the PSLRA's discovery stay" undermines the partial lifting of the stay. *Id. See also In re S. Pac. Funding Corp. Sec. Litig.,* 83 F. Supp. 2d 1172, 1174-75 (D. Or. 1999).

#### a. Undue Prejudice/Risk of Destruction

Lead Plaintiffs argue that "[s]uch a significant destruction of relevant information is prima facie evidence of prejudice, and satisfies a plaintiff's burden of showing "improper or unfair detriment." (#173); *See In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 107 (D. Mass. 2002); *In re Smith Barney Transfer Agent Litig*., 2012 U.S. Dist. LEXIS 58070, at *11 (S.D.N.Y. 2012) (a showing of imminent destruction is sufficient to lift PSLRA discovery stay); *Kelleher v. ADVO, Inc*., 2007 U.S.

Dist. LEXIS 30309, at *12 (D. Conn. 2007) (same); *In re Nat'l Century Fin. Enters., Inc.*, 347 F. Supp. 2d 538, 542 (S.D. Ohio 2004) ("The destruction of the documents . . . will likely cause actual prejudice to the Plaintiffs.").

Lead Plaintiffs argue that "given the gravity and uncertainty regarding the spoliation at issue," they "must be given an opportunity to discover facts regarding the intentional destruction of relevant evidence." (#158). Lead Plaintiffs assert that without the information sought, Lead Plaintiffs will not be able to assess (1) whether documents are being preserved, (2) whether Lead Plaintiffs can and should move to enjoin Defendants from further destruction of evidence, or (3) whether Lead Plaintiffs can and should seek adverse inferences against Defendants for the destruction that has already occurred.[3] *Id.*

Lead Plaintiffs also assert that they must be permitted to conduct discovery to aid in their efforts to preserve evidence themselves, as they "are not required to rely on the assurances of counsel that relevant evidence will be preserved." *Sarantakis*, 2002 U.S. Dist. LEXIS 14349, at *10. *See also In re Royal Ahold N.V. Sec. and ERISA Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004). The discovery, Lead Plaintiffs assert, will allow them to determine "exactly what occurred here and to learn the full extent to which Lead Plaintiffs have been prejudiced." *Id.*

### b.     **Particularized Discovery**

Lead Plaintiffs assert that the documents and other information sought, as outlined above, are sufficiently particularized, as they concern one subject – the willful spoliation of material evidence. *Id.* *See* 15 U.S.C. §78u-4(b)(3)(B).

. . .

---

[3] It is Lead Plaintiffs' position that they may be entitled to an adverse inference against defendants for the document destruction. *See World Courier v. Barone*, 2007 U.S. Dist. LEXIS 31714, at *2-*3 (N.D. Cal. 2007) (sanctions awarded over objection that spoliator was not a party to the action because "[t]his argument lacks merit because it overlooks a party's affirmative duty to preserve relevant evidence both prior to and during trial" and "courts have extended the affirmative duty to preserve evidence to instances when that evidence is not directly within the party's custody or control so long as the party has access to or indirect control over such evidence"); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("Surely a finding of bad faith will suffice, but so will simple notice of potential relevance to the litigation.").

C. **Defendants' Arguments**

Defendants explain to the court that in the related state court action (*In re CityCenter Constr. Litig., Perini Subgroup*, Case No. A-10-612676-B) (hereinafter "Perini Litigation"), Judge Gonzales appointed a Discovery Committee who selected Litigation Document Group ("LDG") to serve as the central document depository for the action. (#167). Other images not stored in this facility were imaged and stored electronically. *Id*. On February 17, 2012, LDG notified counsel for CityCenter that boxes were missing, and on February 22, 2012, it was conveyed to counsel that the boxes may have been stolen by a former employee in June or July of 2011. *Id*. LDG identified the missing boxes using an index prepared when the boxes were deposited, and counsel informed Judge Gonzales and the other parties that the particular boxes were missing. *Id*.

Defendants assert that the documents relevant to this action are not in peril of destruction that would warrant lifting the congressionally mandated stay, and that defendants were actually the *victims* of the criminally destructive actions. *Id*. The destruction, defendants assert, is in the past, not the future, and the court in the Perini Litigation has addressed the destruction and ensured that the parties have taken preventative measures to safeguard the documents.[4] *Id*. Defendants argue that the broad ranging discovery sought is unnecessary and inappropriate during the stay. *Id*.

1. **Relevance of Documents Destroyed**

Defendants assert that, for purposes of this motion only, they assume that some of the construction files taken from LDG *may* have contained some documents relevant to this action. *Id*. However, defendants stress, "none of the boxes CityCenter deposited at LDG contained documents taken from the custodial files of the Individual Defendants in this case, or of any members of the boards of directors of MGM or CityCenter." *Id*. The custodians of the boxes deposited with LDG were

---

[4] On February 29, 2012, Judge Gonzales held a status conference, where the Chief Executive Officer from LDG identified the suspect and explained that other clients had been the victim of this destruction as well. *Id*. The Discovery Committee was ordered to discuss how to keep documents safe from now on, and the committee replaced LDG with two new court-appointed depositories, one for paper files and one for electronically stored information. *Id*.

persons or entities involved in the CityCenter construction project, not with MGM's or CityCenter's financial reporting, investor relations, corporate accounting or top management. *Id.* Defendants also assert that "more than 95% of CityCenter's document production in the Perini Litigation that was imaged in electronic form remains safe, both on deposit with the central document repository and in duplicate in the possession of CityCenter's counsel." *Id.*

### 2. No "Immediate Peril"

Defendants assert that the PSLRA presumes that parties will take necessary steps to preserve relevant documents, and the Lead Plaintiffs have not identified a single document[5] that they feel is threatened with immediate or probable destruction." *Id.* Defendants argue that all of the necessary precautions have been put into place, and the circumstances of the theft, as described above, do not establish fault on the part of any party that now has control over the documents, much less the defendants here. *Id.* Since the individual who destroyed the document is no longer able to access the documents, there is no threat that documents will be destroyed in the future. *Id.*

### 3. No "Undue Prejudice"

Defendants argue that no undue prejudice will result if the stay is not lifted, and that Lead Plaintiffs have not provided any support for their assertion that it will. *Id.* Even in actions where the defendants were accused of spoilation, defendants assert, "the approach required by PSLRA was to, first, determine whether the case survives the motions to dismiss, and to permit discovery relating to the allegations of spoilation only if and when the case survives the motions to dismiss." *Id. See In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig.*, 02 MDL 1484(MP), 01CV6881(MP), 2004 U.S. Dist. LEXIS 2215, at *1 (S.D.N.Y. Feb. 18, 2004) (holding that allegations that defendant had

---

[5] *In re Rambus, Inc. Secs. Litig.*, C 06-4346 JF (HRL), 2007 U.S. Dist. LEXIS 38056, at*6 (N.D. Cal. May 14, 2007) (holding that where alleged past destruction of documents is attributed to the defendants themselves, such destruction is "insufficient to satisfy the 'preserve evidence' prong for lifting the discovery stay in this securities [litigation]" where the plaintiff fails to identify with particularity any documents in peril of being destroyed in this litigation).

spoliated emails did not support lifting PSLRA stay; court would "respond with appropriate sanctions if it determines, should this case go so far as discovery, that this is in fact what happened").

Defendants assert that they should not be burdened by unnecessary broad-ranging discovery, when Lead Plaintiffs have not demonstrated an emergency warranting such extraordinary relief. *Id.*

### D.      Discussion

As an initial matter, based on the record before the court, the court finds no merit in Lead Plaintiffs' claims that defendants concealed the destruction of evidence from Lead Plaintiffs or from the court.[6]

The court finds that lifting the stay is unwarranted**.**  The PSLRA discovery stay may only be lifted upon a finding that: (i) the request is sufficiently particularized; and (ii) maintenance of the stay would either generate impermissible risk of the destruction of evidence or create undue prejudice. *See Waldman*, 2009 U.S. Dist. LEXIS 1988, at *2.  The discovery order proposed by Lead Plaintiffs (#158-1) is unspecified in scope and is open-ended. *Id.*  The destruction of evidence cannot be undone by discovery, the Lead Plaintiffs have not been prejudiced by the destruction in a manner than can be cured by conducting discovery at this stage, there is no showing of a risk of further destruction of evidence, and defendants and their counsel did not violate any Federal Rule or any provision of the PSLRA. *Id.* In light of the purposes underlying the mandatory stay, particularly to avoid costs and burdens imposed by discovery, this court will not lift the stay to permit the discovery proposed by Lead Plaintiffs.  *See* H.R. Conf. Rep. No. 104-369, at 37 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 736); S. Rep. No. 104-98, at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 693) (the purpose of the stay is (i) to protect defendants from being coerced into a premature settlement of a frivolous claim to avoid the costs and burdens imposed by discovery; and (ii) to protect defendants from a fishing expedition designed to find

---

[6] On March 2, 2012, the Review Journal ran an article regarding the destruction of the documents in the Perini Litigation. (Court's Exhibit 1).

actionable conduct not pled in the complaint). *See also Evans v. Jeff D.*, 475 U.S. 717, 744 (1986) (courts interpret a "statute in the way that is most consistent with Congress' broader purpose").

Accordingly and for good cause shown,

IT IS ORDERED that Lead Plaintiffs' Motion to Lift Stay (#158) is DENIED.

DATED this 21st day of June, 2012.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE