# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re MGM MIRAGE SECURITIES LITIGATION | Case No.: 2:09-cv-01558-GMN-VCF<br><br>**ORDER** |

Pending before the Court is Defendants MGM Resorts International ("MGM"), James J. Murren ("Murren"), Daniel J. D'Arrigo ("D'Arrigo"), and Robert C. Baldwin's ("Baldwin") (collectively, "Defendants") Motion to Dismiss (ECF No. 170) and Lead Plaintiffs Arkansas Teacher Retirement System, Philadelphia Board of Pensions and Retirement, Luzerne County Retirement System, and Stichting Pensioenfonds Metaal en Techniek (collectively, "Plaintiffs") Motion to Strike (ECF No. 186). The Court has considered the Responses and Replies to the respective Motions. For the reasons below, Plaintiffs' Motion is denied, and Defendants' Motion is denied.

## I.   BACKGROUND

This is a class action brought on behalf of purchasers of MGM securities between August 2, 2007 and March 5, 2009 (the "Class Period). (ECF No. 1.) MGM owns and operates large casino resorts, primarily in Las Vegas, Nevada. (*Id.* at ¶ 16.) Defendants Murren, D'Arrigo, and Baldwin (the "Individual Defendants") were high ranking officers and directors of MGM who allegedly made false or misleading statements to the public to artificially inflate the price of MGM stock during the class period. (*Id.* at ¶ 17-20.) Plaintiffs' allegations center on MGM's undertaking and management of the CityCenter project, "the largest privately developed construction project in the western hemisphere." (*Id.* at ¶ 26.)

The following allegations are contained in the Complaint. Throughout the Class Period,

Defendants made false and misleading statements relating to CityCenter's progress, and how that affected MGM's fiscal health during the financial crisis. On multiple occasions, Defendants represented that CityCenter's construction was proceeding both on-budget and on-schedule. (*See, e.g.*, *id.* at ¶¶ 45, 91, 97, 131.) Yet, the design of the project was constantly changing, and construction was plagued with defects and failed inspections. (*See, e.g.*, *id.* at ¶¶ 48-52, 107-08, 116.) These construction flaws culminated in a significantly scaled back design and delayed completion date of the Harmon building, a major component of CityCenter. (*Id.* at ¶ 140) Additionally, Defendants made multiple assurances that MGM was financially stable and had ample access to the financing needed to complete CityCenter. (*See, e.g.*, *id.* at ¶¶ 53, 55, 68, 83, 87, 95, 101, 114, 119.) These statements were made in the face of constricting credit markets, declining cash flow, increased construction costs at CityCenter, and creditors' increasing unwillingness to finance projects in Las Vegas. (*Id.* at ¶¶ 56, 112). These statements artificially inflated the price Plaintiffs paid for MGM stock, and when the truth became known, MGM's stock rapidly decreased in value. (*Id.* at ¶ 175.) The Complaint also contains allegations that Defendant Baldwin sold stock after the misrepresentations were made, thereby collecting on the inflated value. (*Id.* at ¶¶ 20, 66, 76, 195.)

Plaintiffs brought this action for violations of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and its corresponding Rule 10b-5 against all Defendants, and for control person liability under § 20(a) of the Exchange Act against the Individual Defendants. The Court determined that the initial complaint failed to state a claim due to its puzzle-like pleading, but granted Plaintiffs leave to amend. (ECF No. 151.) Plaintiffs then filed their First Amended Complaint (the "Complaint"), which Defendants now seek to dismiss. Defendants argue that the Complaint fails to adequately allege (1) actionable false or misleading statements, (2) that any statements were made with scienter, and (3) that the statements were the cause of Plaintiffs' loss. Defendants also argue that the Complaint fails to adequately plead control

person liability as no underlying violation of the securities laws is properly pled.

Along with their Motion, Defendants filed a request for judicial notice of a number of documents filed with the SEC and historical stock price information relating to MGM, its competitors, and the entire market. (ECF No. 172). Plaintiffs object to the submission of the documents as premature to this stage of the litigation and moved to strike Defendants' request. (ECF No. 186.)

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" and "[f]actual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Id.*

### B.     Pleading Requirements for Securities Actions

Section 10(b) of the Exchange Act makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or

contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Pursuant to this section, the SEC promulgated Rule 10b–5, which makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b).

As with all claims based on fraud, a plaintiff alleging violations of § 10(b) and Rule 10b-5 must also comply with Fed. R. Civ. P Rule 9(b), which requires that "the circumstances constituting fraud or mistake . . . be stated with particularity." This rule requires that claims of fraud be accompanied by the "who, what, when, where, and how" of the conduct charged, *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)), so that the complaint does not simply "lump multiple defendants together." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011). This requirement ensures that the defendants are on "notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106.

Additionally, Congress passed the Private Securities Litigation Reform Act ("PSLRA") imposing an even higher pleading standard on plaintiffs in securities fraud cases. The PSLRA requires that a complaint must "specify each statement alleged to have been false or misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(2). Further, where recovery is dependent on a showing that defendant acted with a particular state of mind, "the complaint shall, with respect to each act or omission alleged . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* For § 10(b) actions, the required state of mind is "knowing" or "intentional" conduct or "deliberate recklessness." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008).

To avoid dismissal of a claim for relief under § 10(b), plaintiffs must allege (1) defendant made a material misrepresentation or omission, (2) with scienter or intent to defraud, (3) in connection with the purchase or sale of a security, (4) plaintiff relied on that misrepresentation, (5) plaintiff suffered economic loss, and (6) that loss was caused by the misrepresentation or omission. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005). When ruling on a motion to dismiss, the Court may take into account matters of public record, any exhibits attached to the complaint, and any documents referred to therein. *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (in evaluating a motion to dismiss under Rule 12(b)(6), a court "may consider documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings").

### III. DISCUSSION

#### A. Motion to Strike

Because a portion of Defendants' Motion to Dismiss relies upon information presented in their request for judicial notice, the Court will initially address the request and Plaintiffs' corresponding Motion to Strike. Under Rule 12(f) a "court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." Rule 7(a) identifies pleadings as the complaint, answer, and reply, but not motions and other papers. *See* Fed. R. Civ. Pro. 7(a). Thus, a motion to strike is limited to pleadings. *United States v. Crisp*, 190 F.R.D. 546, 550–51 (E.D. Cal. 1999) (citing *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)). There is no provision in the Federal Rules of Civil Procedure for motions to strike another motion or memoranda. *See id*. However, a motion to strike matters that are not part of the pleadings may be regarded as an invitation by the movant to consider whether proffered material may properly be relied upon. *Id*. Thus, the Motion to Strike is denied as procedurally flawed, but the Court will consider Plaintiffs' opposition to the request for judicial notice.

Under Fed. R. Evid. 201, a court may take judicial notice of facts that "can be accurately

and readily determined from sources whose accuracy cannot reasonably be questions." Courts have held that SEC filings and historical stock price information qualify as judicially noticeable. *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023-24 (C.D. Cal. 2008). Where a party has requested judicial notice and provided the necessary information, the Court must take judicial notice. Fed. R. Evid. 201(c)(2).

Defendants request judicial notice of twenty-five exhibits. Exhibits 1-10 are proxy statements, Form 10-Ks, and Form 4s filed by MGM with the SEC. These documents are judicially noticeable, and the Court takes notice of them to the extent that they are admissible and accurately reflect information in the public record. Exhibits 11-24 are historical stock prices as recorded by Yahoo! Finance[1] of MGM, MGM's competitors, and the S&P 500. The Court takes judicial notice of this information to the extent it is relevant and admissible. Exhibit 25 is a copy of the transcript of MGM's February 21, 2008 earnings call referenced in the Complaint. This document is not a part of the public record and not judicially noticeable, but the Court may consider it under the incorporation by reference doctrine. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Nevertheless, although the Court has taken judicial notice of the documents, the Court agrees with Plaintiffs that the Defendants' arguments based on these documents are premature. Defendant relies on the proffered documents to support their arguments that Defendant Baldwin's stock transactions were part of his regular trading practices and that the decline in the price of MGM's stock was not as a result of revealed truth following misstatements, but rather a systemic decline in stock prices across the gaming industry and the market generally.[2] (ECF No.

---

[1] Courts have relied on Yahoo! Finance for accurate historical pricing of stocks. *See, e.g.*, *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2007 WL 1456047, at *2 (N.D. Cal. May 17, 2007).

[2] Defendants also argue that the earnings call transcript shows that the statements made, at least in one earnings call, were accompanied by cautionary language. However, as discussed below, many of the alleged statements are not forward-looking, and do not qualify for the safe harbor regardless of any accompanying language. Further, any forward-looking statement known to the speaker to be false or misleading when made must be accompanied by cautionary language so indicating.

172.)  The information in the exhibits does not definitively compel this conclusion, but rather only tend to support Defendants' competing inference.  Thus, although the information is evidence relevant to proving a viable defense for Defendants, the presentation of such evidence is not proper on a Motion to Dismiss.

### B.  Material Misrepresentations or Omissions

To adequately plead a misrepresentation or omission, a plaintiff must allege specific facts showing either (1) a false statement of material fact, or (2) an omission of material fact that renders other statements misleading.  *See In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993).  Additionally, a statement that is technically true, may still be misleading and actionable under securities laws where it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists."  *Brody v. Transitional Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).   However, statements that are merely incomplete are not actionable.  *Id.*  The complaint must adequately explain why the statement or omission is misleading, and allege that the statement or omission was false or misleading when made.  *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1404 (9th Cir. 1996).

Plaintiffs' Complaint contains numerous allegedly actionable statements made by Defendants.  Those statements generally can be sorted into three categories:  Statements regarding MGM's financial status and access to credit financing, statements that CityCenter was on budget, and statements that CityCenter was on schedule.

#### 1.  *Statements regarding financial security and access to credit*

The Complaint contains several alleged statements regarding the financial well-being and how that affected its ability to obtain additional financing for CityCenter.  Plaintiffs allege that Defendants represented on several occasions the company was financially sound, with a good balance sheet and strong cash flows.  Defendants allegedly further represented that these characteristics gave MGM ample flexibility in credit markets to obtain additional financing for

CityCenter because it was uniquely positioned such that potential lenders were approaching MGM to provide financing.  Additionally, Plaintiffs allege that Defendants represented their partnership with Dubai World "evaporated" risk.  Plaintiffs allege that these statements were misleading because MGM faced tightening credit markets and it was increasingly difficult to secure financing for Las Vegas projects.  Moreover, Plaintiffs allege that MGM's cash flows were shrinking and CityCenter's costs were constantly increasing. Thus, MGM's credit worthiness was deteriorating, only exacerbating its predicament.

Defendants argue that these allegations are insufficient to show falsity because first, the Complaint never alleges MGM was unable to attain financing and second, even if the financial outcome of the company did not turn out as expected, the statements were inactionable, overly-optimistic predictions about future economic events.  However, taking all well pled facts as true, Defendants arguments mischaracterize the allegations.  First, Plaintiffs do not allege that their harm was caused by MGM's inability to finance CityCenter.  Rather, the alleged harm was that the revelation that MGM had maxed out its borrowing capacity under its senior credit facility caused its stock price to plummet.  In other words, the revelation of Defendants' *inflexibility* caused the harm.  Thus, Defendants statements regarding its financial health providing it flexibility and optionality with respect to financing were misleading because they created an impression of sound fiscal footing that materially differed from the actual financial state of the company.

Second, Defendants improperly trivialize the content of the alleged statements. Statements about how a company's financial status affects its ability to finance its operations moving into the future are not vague, corporate optimism that investors should know to ignore. *See In re Syntax Corp. Sec. Litig.*, 855 F. Supp. 1086, 1095 (N.D. Cal. 1994), *aff'd* 95 F.3d 922 (9th Cir. 1996) (holding such statements as "we're doing well," "we have a great future," "business will be good," and "everything is clicking," as non-actionable).  Further, the alleged

statements were not projections about the future, but about the present financial state and access to financing of MGM.  Finally, the Complaint alleges that, at the time the statements were made, Defendants were aware of the facts that undermined their veracity.  Consequently, the complaint adequately alleges actionable misleading statements.

        *2.     Statements that CityCenter was on-budget*

The Complaint also contains several of Defendants' statements that the CityCenter project was "on-budget."  Plaintiffs allege that at the beginning of the Class Period, the estimated budget for the project was $7.4 billion, and this estimate was reaffirmed in statements by the Defendants.  Later, Defendants revised the estimate up to $7.8 billion, stating that the increase was due to "the complexity of the hotel casino podium, the fair buildings, and the Libeskind-designed roof structure over the crystals retail area, which required additional steel, concrete and fabrication, along with additional design changes for exterior lighting and water features and site utility costs."  The budget was again revised upward to $8.1-$8.4 billion, but Defendants represented that they had guaranteed maximum price ("GMP") contracts in place with most general contractors. This budget was later reaffirmed and Defendants represented that approximately 75% of the GMP contracts were in place.  The Complaint details several statements where the last estimate was reaffirmed.

Plaintiffs claim that these statements were misleading because the publicly announced budget at the beginning of Class Period—as well as each subsequent upward revision—was purposefully and grossly under-estimated.  Plaintiffs allege that MGM manipulated the construction budget by reducing the construction estimates it had received by 20%, using cost-estimate methods not customary for the industry, and arbitrarily cutting millions of dollars off the total budget.  Further, Plaintiffs allege that the GMPs represented as a method of keeping costs to a minimum, actually provided for liberal cost increases due to design changes and rush orders.  Plaintiffs also allege that the design of CityCenter was being changed on a near daily

basis, requiring crews to tear down and rebuild parts of the project, as well as increasing the quantity, an often quality, of materials used.  Thus, Plaintiffs allege that at the time Defendants made the various statements that CityCenter was on-budget, Defendants knew or should have known that publicly announced budget was grossly underestimated, and that the actual costs would necessarily exceed the budget.  Plaintiffs also allege that each upward revision on the budget was similarly known to Defendants to be underestimated and not representative of the actual costs entailed in CityCenter's development.

In the Motion, Defendants argue that although their initial estimates were inaccurate, they were not fraudulent.  Defendants claim that Plaintiffs' allegations are similar to those in *In re Stratosphere Corp. Sec. Litig.*, No. CV-S-96-708-PMP, 1997 WL 581032, at *15 (D. Nev. May 20, 1997).  In *Stratosphere*, the plaintiffs alleged "that because cost overruns eventually occurred," the defendants "must have known that they existed at the time of the allegedly false statements." *Id.*  However, the court disagreed, holding that inaccurate projections do not necessarily involve fraud, and "fraud by hindsight" is insufficient to meet the heightened pleading standard. *Id.* (citing *In re Syntex Sec. Litig.*, 95 F.3d 922 (9th Cir. 1996); *In re VeriFone Sec. Litig.*, 11 F.3d 865, (9th Cir. 1993).

There are significant differences, however, between Plaintiffs' allegations and those in *Stratosphere*.  In *Stratosphere*, the plaintiffs simply alleged that the company had admitted to cost overruns.  There were no allegations of what the defendants knew at the time the statements were made. Consequently, the inference was simply that the projections did not clearly predict future events accurately. Here, however, Plaintiffs have alleged that Defendants based their estimations on essentially falsified information.  Thus, even though an estimate is a future projection, Defendants statements were misleading because, at the time the statement was made, Defendants knew the estimate was not accurate and that actual costs were reasonably expected to exceed the stated budget.  The Complaint adequately alleges false statements in relation to

CityCenter's on-budget status.

### 3. *Statements that CityCenter was on-schedule*

The Complaint also contains many statements by Defendants relating to the fact that "construction [of CityCenter was] progressing nicely," and the project was "on track for a late 2009 opening." Plaintiffs allege that these statements were false because of the constant modification of the design and pervasive flaws in both the design and construction of the project. Problems with the rebar installation at the Harmon threatened the building's structural integrity, one of the floors at another building was "floating" and required significant repairs, and the concrete pour at another building was "screwed up." Plaintiffs allege that Clark County building safety inspectors had issued several Non-Compliance Reports and notices of violation, and had even threatened to shut down all construction at the site. Thus, Plaintiffs argue that Defendants knew, at the time the statements were made, that the project could not be completed on time.

Defendants argue that these statements were not false because CityCenter was completed on time and opened in November of 2009 as planned. Indeed, the Complaint lacks any allegation that CityCenter did not open in late 2009 as stated. However, the completion and opening of CityCenter was only with the significant modification and postponed opening of the Harmon building. This omission would certainly be material as a it significantly altered the "total mix" of information available. *See Basic Inc. v. Levinson*, 485 U.S. 224, 231-23 (1988). Thus, to the extent that Defendants knew that the Harmon building could not be completed, but nevertheless represented that the construction was proceeding on schedule, the omission of plan changes to the Harmon would make any on-schedule statement misleading.

Defendants also argue that the statements are not actionable because they simply recommend predictions about the project completion date. Defendants argue that under *Visionquest CHC, LLC v. Buchholz*, No. C-08-3410 RMW, 2008 WL 5048414, at *1 (N.D. Cal.

Nov. 24, 2008), estimations for completion are not actionable because "real-estate development projects are commonly subject to construction delays." However, Defendants' reasoning is flawed for the same reasons as their *Stratosphere* argument. In *Visionquest*, the plaintiff alleged nothing more than the statements of the defendant. In contrast, Plaintiffs have alleged that at the time the statements were made, Defendants knew of the unfinished design, failed inspections, and construction defects that the project, particularly the Harmon building, was facing. Viewing all well-pled allegations as true, the allegations that statements regarding CityCenter proceeding on-schedule were misleading are adequately pled.

### C. Safe Harbor

Defendants argue that any statements that could be considered false are still inactionable as they fall within the PSLRA's safe harbor for forward-looking statements. The safe harbor protects "forward-looking statement[s]" that are "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement[s]." 15 U.S.C. § 78u-5(c)(1)(A)(i). Defendants argue that their statements about the budget and schedule of CityCenter were future projections, and that all statements were accompanied by cautionary language.

However, statements that a project is "on-track," "on-budget," or "on-schedule," are not forward-looking but statements relating to *current* conditions. *See In re Secure Computing Corp., Sec. Litig.*, 184 F. Supp. 2d 980, 990 (N.D. Cal. 2001). Thus, many of the statements alleged are not forward-looking at all. Further, to the extent that some statements alleged in the Complaint were expressed in terms of future expectations or estimations, the Complaint also alleges that those statements were misleading because of the omission of material facts presently known to the speaker. When a defendant makes a forward-looking statement with actual knowledge that it is false or based on faulty information, any cautionary language must include the speaker's belief of the projections falsity, or explanation of the reasons the statement is false

or misleading, to qualify for the safe harbor. *Rosenbaum Capital, LLC v. McNulty*, 549 F. Supp. 2d 1185, 1190 (N.D. Cal. 2008) (citing *In re SeeBeyond Tech. Corp. Sec. Litig.*, 266 F.Supp.2d 1150, 1165 (C.D.Cal. 2003)). Consequently, MGM's cautionary language accompanying any forward-looking statements was not sufficient to qualify for the safe harbor because it did not include an explanation of the facts known to the speaker about the various problems with the CityCenter construction costs and schedule.

### D. Scienter

Defendants also argue that the Complaint lacks adequate allegations that any false statements were made with the requisite scienter. To plead scienter, a plaintiff must "'state with particularity facts giving rise to a strong inference' that defendants acted with the intent to deceive or with deliberate recklessness as to the possibility of misleading investors." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008). Courts must "accept all factual allegations in the complaint as true" and "must consider the complaint in its entirety. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322-23. Scienter is adequately alleged when "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

The Complaint contains sufficient allegations to support a strong inference that Defendants acted with the intent to deceive or at least reckless disregard for the possibility of misleading investors. Defendants argue that scienter has not been adequately pled because (1) the Complaint does not adequately link allegations of scienter with the allegedly fraudulent

/ / /

/ / /

statements,[3] (2) the Individual Defendants retained a majority of their shares during the Class Period, (3) Baldwin's stock sales were consistent with regular trading practices, (4) the Complaint details continued work on the Harmon despite its allegations that Defendant's knew it was "doomed," and (5) other law suits, Sarbanes-Oxley Certificates, or the confidential witnesses do not create inferences of scienter.  Defendants argue that the inference that Defendants expected to weather their financial problems is a more compelling inference than fraud.

However, Defendants grossly misapply the standard.  Defendants improperly scrutinize individual allegations of scienter in isolation and while ignoring the main allegations dealing with scienter.[4]  Taking all the allegations collectively and assuming them true, Defendants purposefully manipulated CityCenter's budget and made on-going misrepresentations in an effort to maintain the impression of progress and success while internally the problems with CityCenter and MGM's finances were known to be significant and only increasing.  This is sufficient to plead scienter.  Additionally, although Defendants present alternative explanations of their actions, Plaintiffs inference of scienter is cogent and at least as compelling as those Defendants present.  Consequently, the Complaint adequately pleads scienter.

### E.   Loss Causation

Finally, Defendants argue that the Complaint does not adequately allege that the misstatements complained of caused Plaintiffs' loss.  To properly plead loss causation, "the plaintiff must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005). "The misrepresentation need not be the sole reason for the decline in value of the securities, but it must be a substantial cause." *In re Gilead Sciences Sec.*

---

[3] Defendants complain that the scienter allegations are poorly labeled as the word "scienter" only appears three times in the Complaint.

[4] Additionally, as explained above, Defendants rely on evidence not properly considered in a Motion to Dismiss.

*Litig.*, 536 F.3d 1049, 1056 (9th Cir. 2008) (internal quotations omitted).  The complaint must provide "sufficient detail to give defendants ample notice of [plaintiff's] loss causation theory, and to give some assurance that the theory has a basis in fact." *Berson*, 527 F.3d at 989-90.

Plaintiffs adequately allege loss causation.  The Complaint contains allegations that the revelation that MGM had reached its maximum borrowing capacity from its senior lending facility caused its stock price to fall 21.35%, that the revelation of significant cost overruns at CityCenter caused a 14.48% decline, and that the announcement that the Harmon building would be scaled back and the opening postponed caused a 9.02% drop in value.  Plaintiffs also allege that each of these revelations was resulted in publications from analysts and downgrades from rating agencies which only resulted in further devaluation of MGM stock.  This adequately puts Defendants on notice of Plaintiffs loss causation theory and provides some assurance that the theory has a factual basis.

Further, even though the Complaint details general economic turmoil, the Complaint still alleges that the misrepresentations were a substantial cause of the devaluation.  In Plaintiffs' loss causation allegations, the dates of the articulated stock price declines correspond with the dates of announcements by MGM, an analyst's report relating to the alleged misrepresentations, or some specific market action in response to the announcement.  Thus, although some of the price decline may have been a result of the general economic climate, the Complaint sufficiently alleges that Defendants' misrepresentations were a sufficient cause.

Consequently, the Court finds that the Complaint has adequately stated a claim for violations of § 10(b) and Rule 10b-5.  As Defendants' sole objection to the control person liability claim is that no underlying violation was pled, the Court will not address the remaining requirements of the § 20(a) claim.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Lead Plaintiffs Arkansas Teacher Retirement System,

Philadelphia Board of Pensions and Retirement, Luzerne County Retirement System, and Stichting Pensioenfonds Metaal en Techniek's Motion to Strike (ECF No. 186), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants MGM Resorts International, James J. Murren, Daniel J. D'Arrigo, and Robert C. Baldwin's Motion to Dismiss (ECF No. 170) is **DENIED**.

**DATED** this 26th day of September, 2013.

_____
Gloria M. Navarro
United States District Judge