**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

*In re* MGM MIRAGE SECURITIES LITIGATION

Case No. 2:09–cv–1558–GMN–VCF

**<u>ORDER</u>**

This action involves the Arkansas Teacher Retirement System, *et al.*'s class action against MGM Resorts International, *et al.* under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*. (First Amend. Compl. (#152) at 82–83[1]). Three motions are before the court: (1) MGM Resorts International's Motion to Compel (#267), (2) the Arkansas Teacher Retirement System's Motion to Compel (#268), and (3) MGM Resorts International's Motion for a Protective Order (#272). Each is ripe.[2] For the reasons explained below, the first motion is granted and the latter two are denied.

**BACKGROUND**[3]

In 2004, MGM Resorts International announced plans for the "CityCenter Project:" a spectacular multi-billion dollar "city within a city" on the Las Vegas strip. (Amend. Compl. (#152) at ¶ 1). The plan involved numerous high rises, including a 4,000 room luxury hotel and casino, several 400-room, non-

---

[1] Parenthetical citations refer to the court's docket.
[2] (*See respectively* Lead Pl.'s Opp'n #270; MGM's Reply #275; Perini Opp'n #276; Lead Pl.'s Reply #278; MGM's Opp'n #276; Lead Pl.'s Rely #278).
[3] This is an interlocutory order, these facts are stated for background purposes only, and are not binding findings. *See City of Los Angeles, HarborDiv. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.").

gaming hotels, 2,650 units of luxury condominiums, and 55,000 square feet of retail, dining, and entertainment space. (*Id.*) It was the largest privately funded construction project in United States' history.

Three years later, the Great Recession struck. (*Id.* at ¶ 3). Despite the global financial meltdown, MGM repeatedly stated that its balance sheet was sound and that it remained optimistic about the CityCenter Project. (*See, e.g.*, *id.* at ¶ 95). Its shareholders, however, found optimism harder to maintain. On October 12, 2007, MGM's stock hit an all-time high of $96.40. (*Id.* at ¶ 67). By March 5, 2009, it experienced a precipitous drop and traded at an all-time low of $1.89 per share. (*Id.* at ¶ 155). Meanwhile, a Clark County construction inspection revealed that one of the buildings involved in the CityCenter Project (i.e., the Harmon Tower) had a 50% chance of collapse in a strong earthquake. Faulty rebar had been installed, undermining the structural integrity of the steel reinforcement columns that provide support for each floor.

Two lawsuits commenced. First, on August 19, 2009, the Arkansas Teacher Retirement System, Philadelphia Board of Pensions and Retirement, and Luzerne County Retirement System ("Lead Plaintiffs") initiated this action in federal court. They allege that, between 2007 and 2009, MGM knowingly mislead investors regarding MGM's financial health and the success of the CityCenter Project. They contend that MGM's misrepresentations its financial condition violated the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*. (*See* generally Compl. #1). Second, MGM initiated a construction-defect action against the Tutor Perini Building Corporation in state court.

Now, as construction workers dismantle the Harmon Tower, MGM and the Lead Plaintiffs are conducting discovery in this action. On September 19, 2014, MGM filed the instant Motion to Compel. It seeks answers to interrogatories and responses to several requests for production of documents. On August 26, 2014, the Lead Plaintiffs also filed a Motion to Compel. They seek an order requiring the

Tutor Perini Building Corporation, which is not a party to this action, to produce everything it has—(*viz.*, all information, documents, and communications)—regarding the CityCenter Project. In response, MGM filed the instant Motion for a Protective Order to protect Perini from the Lead Plaintiffs' document subpoena. This order follows.

## STANDARD OF REIVEW

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Parties may not, however, obtain "discovery of any matter relevant to the subject matter involved in the action" absent leave of court and a showing of "good cause." *Id.*

These provisions provide for "[l]iberal discovery." *Seattle Times, Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Liberal discovery serves "the integrity and fairness of the judicial process by promoting the search for the truth," *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993), and assisting "the preparation and trial, or settlement, of litigated disputes." *Rhinehart*, 467 U.S. at 34. Indeed, it permits parties to "fish" for evidence, provided that they cast a "reasonably calculated" lure. FED. R. CIV. P. 26(b), Advisory Comm. Notes (1946) (citation omitted) ("[T]he Rules . . . permit 'fishing' for evidence as they should."); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("[The] discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

Discovery, however, has limits. The Supreme Court has long mandated that trial courts should resolve civil matters fairly but without undue cost. *Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962). This directive is echoed by Rule 26(b)(2), under which the court "must" limit the frequency and extent of discovery if the discovery sought is "unreasonably cumulative or duplicative," can be

3

"obtained from some other source that is more convenient, less burdensome, or less expensive," is untimely, or if "the burden or expense of the proposed discovery outweighs its likely benefit." *See* FED. R. CIV. P. 26(b)(2)(C).

If, as here, a party resists discovery, the requesting party may file a motion to compel. *See* FED. R. CIV. P. 37(a)(1). The motion must certify that the movant has "in good faith conferred or attempted to confer" with the party resisting discovery. FED. R. CIV. P. 37(a)(1); LR 26-7(b); *ShuffleMaster, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996). The motion must also include a threshold showing that the information in controversy is relevant under Rule 26. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978)).

If the requesting party makes both showings, the resisting party then carries a "heavy burden" of demonstrating why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). To meet this burden, the resisting party must specifically detail the reasons why each request is improper. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472–73 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."). Boilerplate, generalized objections are inadequate and tantamount to making no objection at all. *See id*.

## DISCUSSION

The parties' discovery dispute presents two questions: (1) whether the Lead Plaintiffs should be compelled to answer MGM's interrogatories and document requests and (2) whether nonparty Tutor Perini Building Corporation should be compelled to produce documents in response to the Lead Plaintiffs' subpoena. Both questions are addressed below.

/// /// ///

/// /// ///

/// /// ///

## I.     MGM's Motion to Compel

MGM's Motion to Compel concerns nine discovery requests. They seek, *inter alia*, facts, documents, and witness supporting the Lead Plaintiffs allegations that MGM made materially false or misleading statements regarding its financial stability and construction defects in the CityCenter Project. (Pl.'s Mot. to Compel (#267) at 5–12). The Lead Plaintiffs proffer five arguments in opposition. They assert that (1) MGM's requests are overbroad, (2) the requested information is privileged, (3) MGM's requests impermissibly seek a narrative or layout of the Lead Plaintiffs' entire case, (4) the requests are "premature," and (5) the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77a, *et seq*. excuses the Lead Plaintiffs from responding to MGM's discovery requests. These arguments—each of which is addressed below—are unpersuasive.

First, the Lead Plaintiffs' assertions regarding the scope of discovery are incorrect. A discovery request is never "overbroad" if it is relevant to "any party's claim or defense." *See* FED. R. CIV. P. 26(b)(1)–(2); 26(c). If a discovery request is properly propounded, a party is presumptively entitled to all relevant information in an opposing party's control, notwithstanding the quantity of relevant information. *See* 8 C. WRIGHT & A MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL § 2007 (3d ed. 2010) (citing *Hickman*, 329 U.S. at 507 ("No longer can the time–honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.")).

Here, the Lead Plaintiffs assert that MGM's document requests and interrogatories are "overly broad" because there is so much evidence of MGM's fraud. For instance, MGM's Eighth and Ninth Interrogatories ask the Lead Plaintiffs to identify each materially false statement that MGM alleged

5

made and the factual basis for the Lead Plaintiffs' allegation that each statement was materially false. (*See* Doc. #267 at 5). The Lead Plaintiffs objected, contending that the interrogatories were overbroad because they request "all sources," "lack reasonable limitations," and "force Lead Plaintiffs to marshal all of their evidence in responding to this interrogatory." (*Id*.); (*see also* Pl.'s Opp'n (#270) at 14) (objecting because MGM seeks "***all*** facts" and "***all information*** related to ***each and every allegation***") (emphasis original).

That is the purpose of civil discovery.[4] Rule 26(b) is "liberal" and provides both parties with a "broad right" to information in the opposing party's control. *See Shoen*, 5 F.3d at 1292. This "broad right" is based on the general principle that a party has "a right to 'every man's evidence,' and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Id*. (citing *United States v. Bryan*, 339 U.S. 323, 331 (1950)); *see also* WRIGHT & MILLER, *supra*, at § 2167 n. 9 ("Interrogatory could properly ask: 'What are the facts upon which defendant bases its allegation that plaintiff was guilty of negligence contributing to the occurrence of the accident?'"). This right permits MGM to "fish" for evidence. *See, e.g.*, *Hickman*, 329 U.S. at 507

Some published[5] decisions have held that an interrogatory may be "overbroad" if it asks "an undifferentiated way for 'all' facts or witnesses that support an opposing party's case." *See* WRIGHT & MILLER, *supra*, at § 2167 n. 22 (citing, *inter alia*, *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D. N.M. 2007)). These cases are inapplicable. MGM's interrogatories do not ask in an "undifferentiated" way for "all facts" supporting the "case." The interrogatories address allegations in the complaint, which the

---

[4] The Lead Plaintiffs similarly incorrectly object to MGM's requests as seeking "a preview of Lead Plaintiffs' class certification brief." (Doc. #267 at 10:4–6). A party may inquire into the facts that an opposing party will use for class certification just as a party may inquire into the facts that an opposing party will use at summary judgment and trial. *See* FED. R. CIV. P. 26.

[5] The Lead Plaintiffs' opposition principally relies on unpublished decisions from other districts.

Lead Plaintiffs put in controversy. (*See* Doc. #267 at 5–12). In response to these allegations, MGM requests supporting facts, documents, and witnesses. This is proper.

These cases are also unpersuasive because they rely on an outdated rule of law.[6] In 1999, Rule 26(b)(1) provided for one form of discovery. It stated that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." FED. R. CIV. P. 26(b)(1) (1999). Today, Rule 26(b)(1) provides for two forms of discovery: party-controlled discovery and court-controlled discovery. The first sentence of Rule 26(b)(1) governs party-controlled discovery. It states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The second sentence of Rule 26(b)(1) governs court-controlled discovery. It states that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id*.

The distinction between party-controlled discovery and court-controlled discovery was designed to curb overbroad discovery. *See* FED. R. CIV. P. 26(b)(1), Advisory Comm. Notes (2000). To prevent overbroad discovery, a party can no longer independently request information that is "relevant to the subject matter involved in the action" without showing "good cause" and obtaining leave of court. FED. R. CIV. P. 26(b)(1). However, Rule 26 places no analogous limit on a party's right to request information that is relevant to a claim or defense. Under Rule 26(b)(2), a court may limit the "frequency and extent" of discovery only if it is unduly burdensome or costly, *see* 26(b)(2)(A)–(B), unreasonably cumulative or duplicative, *see* 26(b)(2)(C)(i), untimely, *see* 26(b)(2)(C)(ii), or disproportional, *see* 26(b)(2)(C)(iii). Rule 26(c)(1) provides comparable bases on which the court may limit discovery. But, neither Rule

---

[6] Each of the cases cited in *Lucero* predate the 2000 Amendment to Rule 26(b)(1).

26(b)(2) nor 26(c) permit a court to limit discovery that is relevant to a claim or defense because, as the Lead Plaintiffs assert, there is too much information (i.e., because the request is overbroad).

Second, the Lead Plaintiffs waived their attorney-client and work-product privileges. Rule 33(b)(4) governs objections to interrogatories. It states: "[t]he grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause shown, excuses the failure." FED. R. CIV. P. 33(b)(4). This rule supplements Rule 26(b)(5)(A), which governs claims of privilege and provides:

> When a party withholds information otherwise discoverable by claiming that the information is privileged . . . the party must expressly make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed— and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

FED. R. CIV. P. 26(b)(5)(A). These provisions codified the rule that general objections and boilerplate objections are tantamount to making no objection at all. WRIGHT & MILLER, *supra*, at § 2016; *see also Beckman Indus.*, 966 F.2d at 472–73 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.").

Here, the Lead Plaintiffs included following general objection in many of their answers to MGM's requests: "Plaintiffs also object to this interrogatory to the extent it seeks or requires disclosure of legal reasoning, theories, and/or other information protected by the attorney-client privilege and/or work-product doctrine." (*See, e.g.*, Doc. #267 at 5:17–20, 5:27–28, 6:14–17, 7:1–4, 7:21–24, 8:24–27). Additionally, the Lead Plaintiffs failed to argue that good cause exists to excuse their failure to properly assert the attorney-client or work-product privileges. *See* FED. R. CIV. P. 33(b)(4). This is insufficient as a matter of law.

Third, the court is unpersuaded that MGM's interrogatories request a narrative, portrait, or "lay out" of the Lead Plaintiffs' "entire case" and are, therefore, unduly burdensome. (Doc. #270 at 2, 13).

An interrogatory that requests each and every fact in support of an allegation, claim, or defense may be objectionable. Rule 26(b)(2)(C)(iii) requires the court to limit the extent of discovery if the burden outweighs the benefit in light of the issues at stake in the action. Some published[7] decisions have determined that an interrogatory which seeks "each and every fact" and every "application of law to fact" is impermissible under Rule 26(b)(2)(C)(iii). *See, e.g.*, *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998). The reason: these interrogatories require "a laborious, time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant and trivial details." *Id.*

Here, the Lead Plaintiffs contend that MGM's interrogatories are analogously burdensome because they seek "***all*** facts" and "***all information*** related to ***each and every allegation***." (Doc. #270 at 14) (emphasis original). The court disagrees. A reasonable reading of MGM's interrogatories indicates that MGM seeks each principal and material fact, not every incidental, secondary, irrelevant, and trivial detail. The Lead Plaintiffs should read MGM's interrogatories accordingly and identify each principal and material fact, person, and document as requested.[8]

Fourth, the court finds as a matter of law that MGM's contention interrogatories are not premature, as the Lead Plaintiffs' contend. Rule 33 does not limit when contention interrogatories may be propounded. FED. R. CIV. P. 33(a)(2) ("An interrogatory . . . is not objectionable" because it asks for a "contention that relates to facts or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete."). The decision to limit or stay discovery belongs to the court. *Id.*; *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Limits and stays are generally disfavored. *See, e.g.*, *Blankenship*, 519 F.2d at 429 (stating that the party

---

[7] The Lead Plaintiffs' principally rely on unpublished authorities.

[8] This does not mean that "every incidental, and secondary, and detail" is undiscoverable. These facts are discoverable when properly requested. *See, e.g.*, FED. R. CIV. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.").

requesting discovery to be limited carries a "heavy burden"); WRIGHT & MILLER, *supra*, at § 2167 n. 27 (citing *In re One Bancorp Secs. Litigation*, 134 F.R.D. 4, 7–8 (D. Me. 1991) ("Mere fact that interrogatories propounded by defendant in securities-fraud action were contention interrogatories did not warrant order allowing plaintiffs to refrain from answering interrogatories until their own discovery was complete.").

The Lead Plaintiffs argue that the court should excuse the Lead Plaintiffs from answering MGM's contention interrogatories because discovery is substantially incomplete and the Lead Plaintiffs are not prepared to answer.[9] (*See* Doc. #270 at 1–2, 5). This argument conflicts with the controlling federal rules and their spirit. *See* WRIGHT & MILLER, *supra*, at § 2181 (rejecting delaying answers to contention interrogatories). A party has thirty days to answer or object to an interrogatory. FED. R. CIV. P. 33(b)(2). A discovery response need not be definitive; it must only be made "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry." FED. R. CIV. P. 26(g)(1). If the responding party later discovers that an answer is "incomplete or incorrect," that party "must supplement or correct" its answer "in a timely manner." FED. R. CIV. P. 26(e)(1)(A). This means that a responding party is not "irrevocably bound" to its answers. WRIGHT & MILLER, *supra*, at § 2181. Responding parties must simply do their best, move on, and supplement as required.

The court may not depart from this procedure by adding a new rule—(*viz.*, that contention interrogatories should not be propounded until the end of discovery)—because the effects of doing so seem desirable. *Sec. Exch. Comm'n v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011) ("We are not permitted to add new requirements to [the Rule[s]] simply because we like the effects of doing so. This

---

[9] The Lead Plaintiffs predicate this argument, in part, on "the fact that Defendants have had Plaintiffs' document requests since January 2014 [and] have failed to produce meaningful discovery." (Doc. #270 at 2). If MGM's discovery responses are insufficient, the Lead Plaintiffs should move to compel. A party's alleged failure to conduct discovery does not excuse an adverse party from responding to properly propounded discovery requests. *See generally* FED. R. CIV. P. 26(b)–(c).

10

is a job for Congress, or for the various legislative, judicial, and advisory bodies involved in the process of amending the Federal Rules."). Delaying discovery answers would contravene the federal rules' purpose, which is "to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1.[10]

Fifth, the Lead Plaintiffs' reliance on the Private Securities Litigation Reform Act is misplaced. The Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77a, *et seq*. was passed to restrict perceived abuses in securities class-action litigation by testing the sufficiency of a plaintiff's complaint before discovery begins. *Medhekar v. U.S. Dist. Court for the N. Dist. of Cal.*, 99 F.3d 325, 328 (9th Cir. 1996) (discussing Congress' intent). The PSLRA achieves this goal by departing from the Federal Rules of Civil Procedure in two significant ways. First, it requires plaintiffs to satisfy a heightened pleading standard that is more stringent than Rule 8 and Rule 9(b)'s pleading requirements. *See* 15 U.S.C. § 78u–4(b); WRIGHT & MILLER, *supra*, at § 2046.2. Second, the Act departs from the discovery procedures outlined in Rule 26. Under the PSLRA, discovery is permitted "only after the court has sustained the legal sufficiency of the complaint." *SG Gowen Sec. v. U.S. Dist. Court for the N. Dist. Of Cal.*, 189 F.3d 909, 913 (9th Cir. 1999) (citing S. Rep. No. 104–98 at 14 (1995)).

Under the PSLRA's heightened-pleading standard, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall

---

[10] The court reaches the same conclusion with regard to MGM's interrogatories regarding the Lead Plaintiffs' damages and experts. If the Lead Plaintiffs' cannot answer these interrogatories now, they should state as much and amend accordingly or move to amend the discovery plan and scheduling order to provide for the timeline they request. *See* WRIGHT & MILLER, *supra*, at § 2181. Here, the Lead Plaintiffs objected to MGM's discovery requests, in part, on the grounds that they are "premature and attempt[] to avoid or side-step the Scheduling Order jointly agreed to by the Parties and approved by the Court." (Doc. #267 at 6:24–26). However, the deadline on which the Lead Plaintiffs rely is for class certification, not interrogatories or document requests. (*Id*.) The discovery plan places no time limit on contention interrogatories. (*See* Docs. #228, #263). Additionally, this argument is moot because the Lead Plaintiffs filed their Motion for Class Certification on November 12, 2014.

11

state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B). Here, the Lead Plaintiffs argue that MGM's Motion to Compel is moot because the information MGM requests "has already been provided in great detail in the Complaint itself." (Doc. #270 at 3). This argument confuses pleading with discovery. A pleading contains allegations "showing" that the pleader is entitled to relief. *See* FED. R. CIV. P. 8(a)(2). A discovery response contains information that, *inter alia*, "has a tendency to make a fact more or less probable." *See* FED. R. CIV. P. 26(b)(1), 33(c); FED. R. EVID. 401. The PSLRA's heightened-pleading standard delays discovery; it does not displace discovery. *See* 15 U.S.C. § 78u–4(b)(3)(B).

Rather than the PSLRA, Rule 26(b)(2)(C)(i) provides the basis for the relief the Lead Plaintiffs seek.[11] It states that "the court must limit the frequency or extent of discovery" if the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i). Here, the PSLRA required the Lead Plaintiffs to allege, *inter alia*, "each statement alleged to have been misleading" in their complaint. *See* 15 U.S.C. § 78u–4(b)(1)(B). MGM was served with a copy of the complaint containing these statements. Therefore, Rule 26(b)(2)(C)(i) would have excused the Lead Plaintiffs from responding to discovery requests that seek "each statement alleged to have been misleading" if the Lead Plaintiffs properly answered MGM's interrogatories.[12]

---

[11] The Lead Plaintiffs did not make this argument.

[12] MGM contends that interrogatories cannot be answered by reference as a matter of law. (MGM's Reply (#275) at 2–3). This is incorrect. The cases on which MGM rely borrow a rule of law from the District of Indiana. These cases, in turn, adopt a rule from *Moore's Federal Practice*. It states: an answer to an interrogatory "must be responsive to the question. It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers." 4A J. MOORE, J. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 33.25[1] (2d ed. 1991). In the context of the PSLRA, where a plaintiff must "specify each statement alleged to have been misleading," *see* 15 U.S.C. § 78u–4(b)(1)(B), Rule 26(b)(2)(C)(i) provides an appropriate basis for permitting answers by references to the complaint, provided the references do not "make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers." *See* MOORE, *supra*, at ¶ 33.25[1].

12

Rule 33(b)(3) governs answers to interrogatories. It states that "[e]ach interrogatory must . . . be answered separately and fully." FED. R. CIV. P. 33(b)(3). Here, the Lead Plaintiffs answered MGM's interrogatories with the same blanket statement: "*See* the Complaint." (*See, e.g*., Doc. #267 at 5:20, 6:3, 6:17). This is insufficient. Rule 26(b)(2)(C)(i) permits the court to limit discovery if it "can be obtained from some other source that is more convenient." The Lead Plaintiffs contend that it would be more convenient to refer MGM to the complaint rather than require the Lead Plaintiffs to rewrite each statement in an answer to an interrogatory. The court agrees in theory, but not in fact. The Lead Plaintiffs' blanket statement, "*See* the Complaint," failed to direct MGM to the specific paragraphs in the complaint that are responsive to each of MGM's requests. This is what Rule 33(b)(3) required. Additionally, if the Lead Plaintiffs have since discovered that the statements in the complaint are "incomplete or incorrect," then Rule 26(e)(1)(A) requires supplementation now. *See* FED. R. CIV. P. 26(e)(1)(A).

Therefore, MGM's Motion to Compel is granted.

**II.** **Lead Plaintiffs' Motion to Compel & MGM's Motion for a Protective Order**

The parties' filings present a second question: whether nonparty Tutor Perini Building Corporation should be compelled to comply with the Lead Plaintiffs' March 6, 2014 document subpoena. The subpoena requests "all" information regarding the design, engineering, and construction of the CityCenter project from a nonparty currently involved in a state-court, construction-defect action. (*See* Pl.'s Mot. to Compel (#268) at 5–8). The Lead Plaintiffs' Motion to Compel asserts that compliance should be ordered because the documents are relevant and the request is not unduly burdensome or prejudicial. (*Id*. at 10, 12, 16). MGM's Motion for a Protective Order counters that compliance would be unduly burdensome because the subpoena requests irrelevant information and

approximately 17.5 terabytes of data.[13] (Def.'s Mot. for Prot. (#272) at 2). Both motions are denied without prejudice for three reasons.

First, the court denies the Lead Plaintiffs' Motion to Compel because they failed to demonstrate "good cause" for requesting information "relevant to the subject matter involved in the action." FED. R. CIV. P. 26(b)(1). This matter involves a securities action. The subject matter is the CityCenter Project. The state-court matter involves a construction-defect action. There, too, the subject matter is the CityCenter Project. Rule 26(b)(1) permits the Lead Plaintiffs to unilaterally obtain discovery relevant to their claims (i.e., misrepresentations under the Securities Exchange Act). Nonetheless, the Lead Plaintiffs assert that Rule 26(b)(1) permits them to discovery "any matter the bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." (Pl.'s Reply (#278) at 7–8) (citing *Oppenheimer*, 437 U.S. at 351). This is wrong.

As discussed above, Rule 26(b)(1) was amended in 2000. The current rule only permits a party to "obtain discovery . . . that is relevant to any party's claim or defense." A party may not inquire into matters beyond the claims and defenses and request information "relevant to the subject matter involved in the action" without leave of court. This requires a showing of "good cause." FED. R. CIV. P. 26(b)(1), Advisory Comm. Notes (2000) ("The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.").

Here, however, the Lead Plaintiffs demand 17.5 terabytes of data related to "the subject matter involved in the action" from a nonparty. The Lead Plaintiffs' First Request for Projection seeks "[a]ll

---

[13] In 2000, it was estimated that the twenty-six million books held by the Library of Congress amounted to ten terabytes of data. (Doc. #272 at 2:6–7).

14

documents that have been or will be produced by You in the Perini Litigations, or any related litigation, concerning the CityCenter Project, including any documents obtained through the issuance by You of a subpoena to a non-party. This request is not limited by the Relevant Time Period." (Doc. #268 at 5–6). To obtain this information, the Lead Plaintiffs must show "good cause." *See* FED. R. CIV. P. 26(b)(1). Additionally, in light of their subpoena's broad scope, a showing of good cause would here include, *inter alia*, consideration of the limits and protections created by Rules 26(b)(2) and 45(d)(1).

Second, the court denies MGM's Motion for a Protective Order because it failed to demonstrate that it has standing to request a protective order on behalf of a nonparty. Rule 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order." It does not authorize the relief MGM requests: vicarious standing to request a protective order on a third party's behalf. Presumably, MGM moves for a protective order because MGM claims some right or privilege in the subpoenaed documents. *See, e.g.*, WRIGHT & MILLER, *supra*, at § 2059 ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought. This personal right or privilege standard has been recognized in numerous cases."); *see also In re Rhodes Companies*, LLC, 475 B.R. 733, 738 (D. Nev. 2012) (discussing the privilege). However, MGM does not make this argument, which is a prerequisite for the court finding that MGM has standing to move for a protective order.

Third, the court denies the parties' motions because the parties have not completed their meet and confer. Local Rule 26-7 states that "[d]iscovery motions will not be considered unless a statement of the movant is attached thereto certifying that, after personal consultation and sincere effort to do so, the parties have been unable to resolve the matter without Court action." Here, the Lead Plaintiffs concede that the meet and confer is ongoing. (Pl.'s Opp'n (#277) at 2) (stating that the meet and confer is "a

15

process that remains ongoing as of the date of this filing"). The meet and confer requirement conserves judicial resources by narrowing the issues for the court's review. Until the issues in controversy are narrowed, fully developed, and agreed upon, Rule 37 and Local Rule 26-7 state that a discovery dispute is not ripe for review.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that MGM Resorts International's Motion to Compel (#267) is GRANTED.

IT IS FURTHER ORDERED that Arkansas Teacher Retirement System's Motion to Compel (#268) is DENIED.

IT IS FURTHER ORDERED that MGM Resorts International's Motion for a Protective Order (#272) is DENIED.

IT IS SO ORDERED.

DATED this 25th day of November, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE